CROWELL LAW
Carl D. Crowell, OSB No. 982049
email: carl@crowell-law.com
Drew P. Taylor, OSB No. 135974
email: drew@crowell-law.com
P.O. Box 923
Salem, OR 97308
(503) 581-1240
Of attorneys for plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| **CLEAR SKIES NEVADA, LLC** | Case No.:3:16-cv-00811 |
|---|---|
| Plaintiff, | |
| v. | COMPLAINT |
| **DOE-76.105.226.122,** | COPYRIGHT INFRINGEMENT |
| Defendant, | SUBJECT TO STANDING ORDER No. 2016-8 |
| | DEMAND FOR JURY TRIAL |

COMPLAINT

Plaintiff Clear Skies Nevada, LLC ("plaintiff") complains and alleges as follows:

CONTINUING ACTION

1. This matter has been severed from the original action of Clear Skies Nevada v. Does, 3:15-cv-02142-AC, pursuant to the Order of May 9, 2016, Ecf. 32.

JURISDICTION AND VENUE

2. This is a suit for copyright infringement under 17 U.S.C. §§ 101 et seq. ("The Copyright Act").

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a) as the defendant is believed to reside in this district.

## PARTIES

### PLAINTIFF

5. Plaintiff Clear Skies Nevada, LLC is a Limited Liability Company and the registered copyright holder of the motion picture *Good Kill*.

6. Plaintiff Clear Skies Nevada, LLC is an affiliate of Voltage Pictures (www.voltagepictures.com) producer and distributor of a notable catalog of award willing films.

### The Rights of Plaintiff

7. *Good Kill* has been registered with the United States Copyright Office by the owner, Clear Skies Nevada, LLC, Registration No. PAu 3-762-377, 2015.  Exhibit 1.

8. Under The Copyright Act, Clear Skies Nevada, LLC is the proprietor of copyrights and related interest needed to bring suit for infringement of *Good Kill*.

9. Plaintiff's motion picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

10. Defendant had notice of plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with each motion picture, and marketing and copies, each of which bore a proper copyright notice.

11. Plaintiff comes to court seeking relief as its motion picture is being illegally downloaded and distributed countless times worldwide with many confirmed instances of infringing activity traced to Oregon.

12. Plaintiff seeks relief against the defendant as this defendant has been particularly egregious in the unlawful trafficking plaintiff's motions picture and others.

THE DEFENDANT

13. The defendant identified herein as Doe-76.105.226.122 and is currently known only by their Internet Protocol ("IP") address 76.105.226.122 that was observed by plaintiff's investigator Maverickeye as distributing plaintiff's motion picture.

14. Through geolocation, the IP address used the defendant has been traced to the State of Oregon and this judicial district.

15. The defendant's IP address has been observed and confirmed as distributing plaintiff's motion picture multiple times. The defendant is not a mere viewer of the motion picture, but also a party that persistently maintained the motion picture in a manner to facilitate further distribution and infringing activity by others.

16. The defendant's IP address has also been observed as associated with the peer-to-peer exchange of other copyrighted titles through the BitTorrent network. As such the defendant's conduct is clearly willful and persistent.

17. The volume of activity and titles associated with defendant's IP address indicates that the defendant is likely the primary subscriber or someone who resides with the subscriber as such activity indicates the defendant is an authorized user of the IP address with consistent and permissive access.

18. The volume of activity and titles associated with defendant's IP address indicates that the defendant is not a young child.

19.     The defendant's IP address was at that time of observed infringement managed by Internet Service Provider ("ISP") Comcast, who provides Wi-Fi systems with notable pre-installed security and passwords.

20.     Comcast provides notices and information to its customers about the importance of security, informing them that they are responsible for the activity associated with their account and cautioning subscribers against allowing third party or non-authorized access.

21.     The records maintained by Comcast should be able to identify either the defendant, or the subscriber who contracted with Comcast for service who in turn is likely to have knowledge that will lead to the identity of the defendant.

22.     Plaintiff intends to seek discovery, including issuing a subpoena for records from Comcast to ascertain the true identity of the defendant and other discovery pursuant to Standing Order 2016-8.

## BACKGROUND

### PEER-TO-PEER INTERNET PIRACY

*Operation*

23.     BitTorrent, also known as peer-to-peer file sharing, has become one of the most common systems for users to illegally dispense huge amounts of data, including motion pictures, in digital format.

24.     The BitTorrent protocol enables computers to exchange large files (such as motion pictures) without creating a heavy workload for any individual source/computer. It allows users to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion

pictures) available for copying by other users; (2) search for files stored on other computers; and (3) transfer exact copies of files from one computer to another over the Internet.

25.     The use of BitTorrent requires multiple intentional acts.  A user must load specific software, use the software to join the network, search for a file, and then select the file they wish to download.  As each user or peer joins the network and requests a copy of a file, they form a type of social contract to not only download the file, but to be a part of the network to allow the file to be downloaded by others. Each new peer requesting the file receives pieces of the data from each peer who already has downloaded the file, and then in turn makes that content available to others.

26.     Since the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download because this will maximize his or her download speed and access to content.

27.     The defendant in this action has been observed persistently making plaintiff's motion picture available to others in furtherance of the BitTorrent network.

*The Business of Piracy*

28.     Internet piracy, and in particular BitTorrent piracy, though known as peer-to-peer file sharing, is often a for-profit business as many software clients, torrent sites and networks generate millions of dollars in revenue through sales and advertising.

29.     To increase the value of the advertising and sometimes subscription access sold by torrent sites, many parties work to expand the pool of available titles and speed of downloads available by increasing the number of member peers and thus the desirability of their clients and

networks. To accomplish this they often reward participants who contribute by giving them faster download speeds, greater access, or other benefits.

30. Defendant's participation in the BitTorrent exchange of plaintiff's motion picture is the type of activity that torrent sites use to promote their business and likely directly furthered the for-profit business of at least one torrent site.

31. Many parties, and possibly defendant have been compensated for their participation in expanding the availability of pirated content to others through BitTorrent networks, including plaintiff's movie, even if only through being granted greater access to other pirated content.

32. The use of BitTorrent does more than cause harm through the simple theft of intellectual property. The BitTorrent distribution of pirated files is a model of business that profits from theft through sales and advertising and provides a system of rewards and compensation to the participants, each of whom contribute to and further the enterprise.

33. Based on activity observed associated with the defendant's IP address, defendant is proponent of the BitTorrent distribution system advancing the BitTorrent economy of piracy.

*Harm to Plaintiff and Others*

34. Digital piracy, including BitTorrent piracy, costs the entertainment industry over $80 billion per year.

35. As noted by Senator Levin in Congressional hearings on peer-to-peer Internet piracy, "In the world of copyright law, taking someone's intellectual property is a serious offense, punishable by large fines. In the real world, violations of copyright law over the Internet are so widespread and easy to accomplish that many participants seem to consider it equivalent to jaywalking – illegal but no big deal. But it is a big deal. Under U.S. law, stealing intellectual property is just that – stealing. It hurts artists, the music industry, the movie industry, and others

involved in creative work. And it is unfortunate that the software being used – called 'file sharing' as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm."

36. In 2013, in recognition of the growing problems and challenges with counterfeiting and piracy, The Oregon House of Representatives passed House Memorial 2, which made the following findings:

> Whereas the United States and other nations share the challenge of combating intellectual piracy and the counterfeiting of intellectual property such as … films… and technologies that affect the quality of life; and
> Whereas intellectual piracy and counterfeiting have a significant impact on Oregon's economy, and the economies of other states and of nations around the world, which results in job and earnings losses, reduced tax revenues and increased threats to public health and safety; and
> …
> Whereas protecting and enforcing intellectual property rights is crucial to the future of our innovation-based economy; and
> Whereas industries that use intellectual property extensively generate nearly $7.7 trillion in gross output and account for more than 60 percent of total exports from our nation; and
> Whereas industries that use intellectual property extensively … employ more than 19 million Americans, whose salaries average about 60 percent higher than salaries in industries that do not make extensive use of intellectual property; and
> Whereas intellectual property infringement can undermine the nation's economic security; and
> Whereas violations of intellectual property rights, ambiguities in the law and a lack of enforcement create uncertainty in the marketplace and in the legal system and undermine consumer trust; and
> Whereas intellectual property, including trademarks, [are] essential …; and
> …
> Whereas failing to adequately protect and enforce intellectual property rights will increase counterfeiting and illicit trade;
> …

37. The impact of piracy is far greater than the mere loss of a single sale or loss due to the distribution of one copy of a motion picture. Piracy undermines the economy, job base, and tax base on which our citizens rely and promotes a general disregard for the respect of rights of others.

38.     As such it is clear that giving effect to 17 U.S.C. §§ 101 et seq., and the enforcement of intellectual property rights, and in particular the fight against counterfeiting and piracy are critical issues of importance to the both the United States of America and the State of Oregon.

## CAUSE OF ACTION

(Federal Copyright Infringement)

39.     Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

40.     Defendant, without the permission or consent of plaintiff, copied and distributed plaintiff's motion picture through a public BitTorrent network.

41.     Defendant's actions infringed plaintiff's exclusive rights under The Copyright Act.

42.     The conduct of the defendant has been willful, intentional, in disregard of and indifferent to plaintiff's rights with the intent to cause plaintiff harm.

43.     As a direct and proximate result of the defendant's conduct, plaintiff's exclusive rights under 17 U.S.C. § 106 have been violated.

44.     Plaintiff is entitled to damages pursuant to 17 U.S.C. § 504 and attorney fees and costs pursuant to 17 U.S.C. § 505.

45.     The conduct of the defendant is causing and, unless enjoined and restrained by this Court, will continue to cause plaintiff great and irreparable injury.

46.     Pursuant to 17 U.S.C. §§ 502 and 503, plaintiff is entitled to injunctive relief prohibiting the defendant from further contributing to the infringement of plaintiff's copyrights, the economy of piracy, and ordering that the defendant destroy all copies of the motion picture made in violation of plaintiff's rights.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against the defendant as follows:

    A.    For entry of permanent injunction enjoining the defendant from direct, indirect or contributory infringement of plaintiff's rights, including without limitation by using the internet to reproduce or copy plaintiff's motion picture, to distribute plaintiff's motion picture, or to make plaintiff's motion picture available for distribution to the public, except pursuant to a lawful license or with the express authority of plaintiff. And further directing defendant to destroy all unauthorized copies of plaintiff's motion picture;

    B.    For entry of permanent injunction enjoining the defendant from supporting the BitTorrent economy of piracy by enjoining the defendant from direct, indirect or contributory infringing file sharing in violation of U.S. copyright law;

    C.    Statutory damages pursuant to 17 U.S.C. § 504;

    D.    For plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

    E.    For such other and further relief as the Court deems proper.

///

///

///

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

DATED: May 10, 2016.

                Respectfully submitted,

                CROWELL LAW

                */s/ Carl D. Crowell*
                Carl D. Crowell, OSB No. 982049
                carl@crowell-law.com
                Drew P. Taylor, OSB No. 135974
                drew@crowell-law.com
                503-581-1240
                Of attorneys for the plaintiff