UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CLEAR SKIES NEVADA, LLC, | Case No. 3:16-cv-811-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| GRANT KAINU, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Clear Skies Nevada, LLC ("Clear Skies"), brings this lawsuit pursuant to the Copyright Act, 17 U.S.C. §§101-1332 (the "Act"), against Grant Kainu ("Kainu") alleging unlawful downloading and distribution of Clear Skies's motion picture, *Good Kill* (the "Movie"), using peer-to-peer file-sharing software known as BitTorrent. Clear Skies asserts a single claim for direct copyright infringement. Clear Skies now moves for summary judgment on Kainu's liability under

the Act, leaving the issue of damages for trial.[1]

The court finds Clear Skies has an enforceable copyright interest in the Movie, Kainu copied protected elements of the Movie, and Kainu acted with, at the minimum, recklessness. Accordingly, the court recommends granting Clear Skies's motion for partial summary judgment on its sole claim for direct copyright infringement with a finding such infringement was willful.

*Preliminary Procedural Matter*

I. Premature Summary Judgment Motion

Kainu asserts Clear Skies's partial summary judgment motion is premature. Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Kainu asks the court to deny Clear Skies's motion for partial summary judgment.

Clear Skies filed its motion for partial summary judgment on February 25, 2017. At that time, the discovery deadline was March 28, 2017. On March 2, 2017, and again on March 23, 2017,

---

[1] Clear Skies also filed a motion for sanctions for spoliation of evidence seeking the exclusion of evidence or defenses Kainu might submit related to data on his hard drives, an adverse inference jury instruction that any evidence on the hard drives would support Clear Skies's claims and allegations, a finding Kainu's infringing conduct was willful and intentional, and costs and attorney fees related to discovery to date. With the exception of costs and attorney fees, this Findings and Recommendation effectively awards the sanctions requested, making a ruling on the motion for sanctions unnecessary. Accordingly, the court defers consideration of Clear Skies's motion for sanctions pending resolution of Clear Skies's motion for summary judgment. Moreover, Clear Skies's request for costs and attorney fees related to discovery will be addressed upon the termination of this lawsuit.

Kainu requested extensions of time to respond to the partial summary judgment motion, citing his lawyer's criminal defense schedule. In his second motion, Kainu also requested an extension of the discovery deadline to May 12, 2017, identifying a need "to serve one narrow set of document requests and interrogatories concerning damages." (Mot. to Extend Def.'s Time to Respond to Pl.'s Mots. for Summ. J. and Sanctions and to Extend Disc. Deadline, ECF No. 43, at 2.) The court granted Kainu's motions and directed him to serve requests for discovery on Clear Skies no later than March 31, 2017.

In his opposition to Clear Skies's motion for partial summary judgment filed on April 3, 2017, Kainu represents he timely served his discovery requests. Despite Kainu's representation in his second motion for extension of time that additional discovery would be restricted to damages, Kainu stated in his opposition brief the outstanding discovery requests instead sought "information essential to justify this opposition and concerning numerous factual issues, including: (i) copyright ownership; (ii) whether Clear Skies Nevada, LLC has standing to pursue this case in view of numerous copyright mortgages and assignments; (iii) whether the notice of copyright was valid and adequate; (iv) whether plaintiff can prosecute this action as a suspended Nevada entity; (v) whether the entire work *Good Kill* was downloaded or accessed by defendant; and (vi) whether plaintiff and/or its agents intentionally seeded the film *Good Kill* on the BitTorrent network." (Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J., ECF No. 47, at 6.) Kainu asserts he needs responses to his outstanding discovery requests to fully support his opposition arguments.

The court finds Kainu's request to deny the partial summary judgment as premature is not well taken for two reasons. First, Kainu requested an extension of the discovery deadline for the purpose of serving a discovery request related solely to damages. Kainu's request for discovery on

substantive liability issues relevant to the pending motion was different from what he requested the court allow and exceeded the scope of the court's order allowing his extension. Second, the discovery deadline has now passed and, it appears, Kainu has received the discovery he sought, but he did not move to supplement his opposition briefing with newly-produced evidence relevant to his opposition arguments. Instead, he elected to rely on the opposition briefing he already had filed. The court concludes from these events that the responses to Kainu's outstanding discovery requests did not reveal evidence that would provide additional support for Kainu's opposition. Consequently, the court rejects Kainu's contention Clear Skies's partial summary judgment motion was premature or he did not have sufficient opportunity to develop evidence relevant to the pending motion.

## II. Exhibits

The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56(c) (2017). A party filing a motion for summary judgment will generally support that motion with affidavits or declarations. Rule 56 requires that the affidavits or declarations "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4) (2017). In ruling on a motion for summary judgment, the court will consider the admissibility of the proffered evidence's contents, not its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its content."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

Kainu asserts the evidentiary objections do not comply with the Local Rules and should be denied for that reason. This district allows parties to assert evidentiary objections as part of a summary judgment motion. *See* L.R. 56-1(b) (2017). However, such objections are subject to the certification requirement of LR 7-1(a), which obligates parties to confer with opposing counsel prior to filing a motion and certify to that fact in the first paragraph of the motion. The purpose of Local Rule 7-1 is to encourage parties to confer and resolve disputes amicably whenever possible, thus preserving judicial resources for only those disputes that truly require court intervention. *Thompson ex rel. Thorp Family Charitable Remainder Unitrust v. Federico*, 324 F. Supp. 2d 1152, 1172 (D. Or. 2004). District courts have broad discretion in interpreting and applying their local rules. *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983). The district court, in its discretion, may remedy a violation of Local Rule 7-1(a) by denying the objections. LR 7-1(a)(3) (2017).

While Clear Skies technically is in violation of LR 7-1, it appears consultation would not have resolved the issues raised in the evidentiary objections. Kainu addressed the merits of the evidentiary objections in its response and Clear Skies has not conceded any issue. Accordingly, the court denies Kainu's request to deny the evidentiary objections based on solely procedural grounds.

*A. Public Record of Recorded Documents*

Clear Skies objects to Kainu's submission of summaries of documents recorded with the United States Copyright Office, claiming in the absence of the documents referred to in the summary, the exhibits themselves have no probative value and are, therefore, irrelevant under Rules 401 and 402 of the Federal Rules of Evidence. Kainu argues the summaries are relevant to copyright ownership, a central issue in this case. In response to Clear Skies's argument that the underlying

documents should have been produced, Kainu asserts Clear Skies is in possession of the documents and could have offered them to eliminate a genuine issue of fact on copyright ownership. Moreover, he represents he requested such documents in discovery and Clear Skies refused to produce them.[2]

Kainu's failure to produce the underlying documents at summary judgment is not fatal. The issue is the admissibility of the content of the evidence, not the form of the evidence. As Kainu could obtain the underlying documents and offer them at trial, the summary of such documents at the summary judgment stage is appropriate. The evidence, which addresses the primary issue of copyright ownership, is relevant. Clear Skies's objection to the summaries is overruled.

*B. Hearsay*

Kainu offers a November 3, 2016 email he received from Kelly Eldridge, an account executive for Swank Motion Pictures, Inc., explaining when a license for a screening of copyrighted material is required and providing the cost of a license to screen the Movie in various scenarios. (Freedman Decl., ECF No. 48, Ex. H.) Eldridge represented: "[t]he copyright might say Paramount Pictures or IFC Films." (Freedman Decl., ECF No. 48, Ex. H at 1.) Kainu offers the email to create a genuine issue of material fact on Clear Skies's right to sue for copyright infringement. Clear Skies objects to Eldridge's statements in the email as hearsay.

Hearsay is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. FED. R. EVID. 801 (2017). Hearsay is admissible only if it qualifies as an exception to the general hearsay rule. The Ninth Circuit has generally applied the limitations found in the hearsay rule, set forth in Rule 802 of the Federal Rules of Evidence, to evidence offered by parties

---

[2] Kainu also makes an argument with regard to the relevance of several offers of judgment made early in this litigation. Clear Skies did not object to evidence of offers of judgment, making this argument moot.

at the summary judgment stage. *Orr v. Bank of America*, 285 F.3d 764, 778 (9th Cir. 2002); *Beyenne v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). When a statement is hearsay within hearsay, or double hearsay, each statement must qualify under some exemption or exception to the hearsay rule. FED. R. EVID. 805 (2017); *United States v. Arteaga*, 117 F.3d 388, 396 n.12 (9th Cir. 1997).

Kainu asserts the hearsay statement could be admissible at trial as a business record or a statement affecting an interest in property and could be offered by live-witness testimony, all of which would resolve the hearsay objection. The court is not convinced Eldridge's statement "the copyright might say Paramount Pictures or IFC Films" would be replicated or supported by a business record. Eldridge is guessing about the copyright mark, a business record would not support that supposition. Statements affecting an interest in property are admissible if found "in a document that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose." Again, Eldridge's guess with regard to what the copyright might say will not be found in a document establishing or affecting a copyright interest. Finally, even if Kainu could offer the statement at trial through the live testimony of Eldridge, such statement is merely conjecture and not admissible on those grounds. Clear Skies's objection to Eldridge's email is sustained.

*Background*

Clear Skies is the registered copyright holder of the Movie, as evidenced by a Certificate of Registration issued by the United States Copyright Office effective April 6, 2015 (the "Certificate"). (Crowell Decl. Ex. 1.) On May 10, 2016, Clear Skies filed a complaint against a Doe defendant

identified only by an internet protocol address (the "IP Address")[3] alleging the Movie had been distributed, along with other copyrighted titles, through the IP Address on multiple occasions. Clear Skies subpoenaed Comcast, the internet provider for the IP Address, seeking information identifying the subscriber of the IP Address. Through information provided by Comcast, Clear Skies identified Grant Kainu ("Kainu") as the IP Address subscriber and, on July 26, 2016, Clear Skies filed an Amended Complaint identifying Kainu as the defendant and infringer (the "Complaint").

In his First Amended Answer to Amended Complaint (the "Answer"), Kainu alleged he instructed "his BitTorrent program to obtain a copy of a movie named *Good Kill* in or about March or April 2015. Defendant forgot about the movie for approximately two months. Thereafter, defendant deleted the movie without watching it." (First Am. Answer to Am. Compl., ECF No. 23 (Am. Answer") ¶ 1.) Kainu denied any knowledge of distributing activity and claimed his conduct with regard to the movie occurred prior to any contact with Clear Skies. (Am. Answer ¶1.) In his deposition, Kainu admitted to not believing the downloading of the Movie, or any movie, on BitTorrent was legal:

> Q. Did you even think that downloading the motion picture Good Kill through BitTorrent was legal?
>
> **A. No, sir.**
>
> Q. Did you ever believe any of the movies or TV shows you downloaded through BitTorrent were downloaded legally?
>
> **A. No, sir.**

---

[3]Initially, Clear Skies's claim against Kainu was included in an action against a number of internet protocol addresses filed on November 15, 2015. On December 23, 2015, Kainu, then known only by the IP Address, moved to sever the defendants. The court granted the motion on May 6, 2016, and Clear Skies then initiated this action naming Kainu as the sole defendant.

(Kainu Dep. 44:17-24.)

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2017). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot

be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2017). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Clear Skies moves for partial summary judgment on the issue of liability only. Specifically, Clear Skies contends the evidence before the court establishes Clear Skies owns a copyright in the Movie, Kainu illegally copied the Movie, and Kainu's actions were willful. Kainu claims a genuine issue of material fact exists with regard to each of these elements.

To establish a claim of copyright infringement, a plaintiff must establish: "(1) ownership of a valid copyright and (2) copying by the defendant of protectable elements of the work." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999). No finding related to intent, including willfulness, is needed establish a *prima facie* claim of copyright infringement. Only upon proving the existence of a viable copyright infringement claim does willfulness become relevant for purposes of demonstrating a right to increased statutory damages or attorney fees. *Hearst Corp. v. Stark*, 639 F. Supp. 970, 979 (N.D. Cal. 1986); *see also* 17U.S.C. §§ 504(c)(2), 505 (2017).

I. Right to Enforce Copyright

Kainu claims the summaries of documents recorded with the United States Copyright Office create a genuine issue of material fact with regard to Clear Skies's right to pursue a claim for copyright infringement of the Movie. Additionally, Kainu asserts Clear Skies's suspended corporate

status prevents them from litigating an infringement claim.

*A. Ownership of Movie Copyright*

Ownership of a copyright is a primary question in a copyright infringement action. Under the Act, the registration of a copyright certificate creates a presumption of validity, as well as ownership. Section 410(c) of the Act provides: "[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima face evidence of the validity of the copyright and of the facts stated in the certificate." Here, the Movie was completed in 2014 and Clear Skies registered its copyright in the Movie effective April 6, 2015. Such registration identified Clear Skies as the author of the entire Movie, and included "all other cinematographic material, additional new footage, production as a motion picture, editing, photography, dialogue, music, [and] special effects." (Crowell Decl. Ex. 1.) Clear Skies initiated this action within five years of the issuance of the Certificate and is, therefore, entitled to a presumption of ownership of an actionable interest in the Movie. The burden then shifts to Kainu to rebut Clear Skies's claim of ownership. "To rebut the presumption, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003) (quoting *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997).

To rebut the presumption of ownership, Kainu offers summaries of documents recorded with the United States Copyright Office evidencing transfers of various interests in the Movie. (Freedman Decl. Exs. A-E.) With the exception of one summary, all referenced documents were executed and recorded prior to the effective date of the Certificate. (Freedman Decl. Exs. B-E.) Additionally, all

of the documents which predate the Certificate reference mortgages or security agreements, not transfers of an ownership interest in the Movie. (Freedman Decl. Exs. B-E.) Consequently, these documents do not raise a genuine issue material fact with regard to Clear Skies's copyright in the Movie.

The remaining summary references a short form assignment of the Movie and two other unidentified motion pictures from Arrow Film Distributors, Ltd. to MGM International Distributors, Ltd. certified on May 17, 2015, and recorded on June 10, 2015. (Freedman Decl. Ex. A.) However, the recorded assignment is identified as being executed or effective as of May 8, 2013, and March 3, 2015, dates which predate the Certificate. (Freedman Decl. Ex. A.) Moreover, the assignment of an interest in the Movie does not necessarily require a finding Clear Skies lacks an ownership interest necessary to support a copyright infringement claim.

Copyright "is a creature of statute, and the only rights that exist under copyright law are those granted by statute." *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 883-84 (9th Cir. 2005). The Act allows only legal or beneficial owners of an exclusive right under a copyright to protect those rights by filing a lawsuit for infringement while they are the owners of such right. 17 U.S.C. § 501(b) (2017). The Act provides:

> the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyright work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyright work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes,

and motion pictures and other audiovisual works, to perform the copyrighted work
publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. §106 (2017). The right to sue for infringement under the Act is not exclusive to the creator or initial owner of the work, but rather is divisible among those who own an exclusive right at the time of infringement. In creating the Act:

Congress wanted to ensure that an owner of any exclusive right in the copyright was entitled to bring a suit for infringement. Congress foresaw a permissible division of rights; the owner of any one of those exclusive rights may sue, with other owners being entitled to notice and joinder. In this sense, Congress intended to "unbundle" the exclusive rights.

*Silvers*, 402 F.3d at 886; see also 17 U.S.C. § 201(d) (2017). Accordingly, while Kainu has offered evidence Clear Skies assigned a security interest in the Movie to another party, such assignment is not inherently inconsistent with Clear Skies's right to pursue this action.

Similarly, Kainu relies on the copyright notices contained on the DVD and the DVD jacket to raise a genuine issue of fact with regard to Clear Skies's copyright interest in the Movie. The DVD identifies Clear Skies as the "author" of the Movie and the DVD jacket references two conflicting copyright notices in favor of Clear Skies and Paramount Pictures. (Freedman Decl. Exs. F and G.) The inclusion of Paramount Pictures on the DVD jacket does not necessarily defeat Clear Skies's status as an owner of a protected copyright interest in the Movie.

The Certificate identifying Clear Skies as the author of the Movie is *prima facie* evidence of

the validity of the copyright and the facts stated in the Certificate. Kainu has not presented sufficient evidence rebut the presumption of Clear Skies's ownership of an actionable copyright interest in the Movie.

### B. *Right of Suspended Corporation to Enforce Copyright*

Kainu additionally argues Clear Skies may not pursue this action as it was temporarily[4] in default for failing to file a list of officers with the State of Nevada by November 30, 2016. (Freedman Decl. Ex. I.) This lawsuit was filed on May 10, 2016. There is no evidence Clear Skies was not a valid, active corporation at that time. Consequently, the issue is only whether Clear Skies was entitled to pursue a validly filed lawsuit while temporarily in a default status.

The capacity to sue or be sued in federal court is determined by the law under which the corporation was organized. FED. R. CIV. P. 17(b)(2) (2017). Under Nevada law, a limited liability corporation that has lost its charter or has dissolved retains the right to pursue a cause of action arising before its dissolution and filed within two years after dissolution. *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 586-87 (2010). The relevant statute provides that:

> [a] dissolved company continues as a company for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or nature by or against it and of enabling it gradually to settle and close its business, to collect and discharge its obligations, to dispose of and convey its property, and to distribute its assets, but not for the purpose of continuing the business for which it was established."

N.R.S. 86.505 (2017). Clear Skies initiated this action before it went in default and was entitled to pursue this litigation despite such default.

---

[4]Clear Skies offered evidence it is currently an active corporation with a valid business license through Novmeber 30, 2017.

PAGE 14 - FINDINGS AND RECOMMENDATION                {sib}

## II. Copying of the Movie

Kainu asserts the evidence before the court establishes he accessed the Movie via BitTorrent, but not that he viewed the Movie. He also contends Clear Skies has failed to present evidence he downloaded the entire Movie. Kainu's reliance on *Malibu Media, LLC v. Weaver*, Case No. 8:14-cv-1580-T-33TBM, 2016 WL 1394331 (M.D. Fla. April 8, 2016), in support of his argument is misplaced. Kainu asserts the *Malibu Media* court found summary judgment inappropriate in a BitTorrent case based on the court's understanding of how BitTorrent functions. What Kainu failed to acknowledge is the court's additional recognition of the existence of genuine issues of material fact on which of the thirty-one films at issue the defendant downloaded, and whether the defendant was assigned the internet protocol address during the relevant time period. *Malibu Media*, 2016 WL 1394331, at *5-*6. These genuine issues of fact do not exist in this case, making *Malibu Media* less than helpful.

As noted by Clear Skies, the Ninth Circuit has held "[b]oth uploading and downloading copyright material are infringing acts. The former violates the copyright holder's right to distribution, the latter the right to reproduction." *Columbia Pictures Indus. Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013). Kainu admitted to downloading the Movie. Whether or not he watched the Movie is irrelevant. Equally irrelevant is the possibility Kainu downloaded only a portion of the Movie. "[A] taking may not be excused merely because it is insubstantial with respect to the infringing work. . . . 'no plagiarist can excuse the wrong by showing how much of the work he did not pirate.'" *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985)(quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.), *cert. denied*, 298 U.S 669 (1936); and citing *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 503 F.

Supp. 1137, 1145 (S.D.N.Y. 1980)("taking of 55 seconds out of 1 hour and 29-minute film deemed qualitatively substantial."))

In the Answer, Kainu admitted to "instructing his BitTorrent program to obtain a copy of a movie named *Good Kill* in or about March or April 2015" and deleting the Movie a few months later. (Am. Answer") ¶ 1.) Accordingly, the evidence makes clear Kainu copied protected elements of the Movie. Clear Skies has offered evidence establishing the *prima facie* elements of a claim of direct copyright infringement.

III. Willfulness of Infringing Activity

In addition to partial summary judgment on its claim of copyright infringement, Clear Skies asks the court to find Kainu's actions constitute willful infringement. Kainu disagrees, arguing the issue of the willfulness of infringing behavior is generally a question of fact and, in light of the manner in which BitTorrent functions, Clear Skies has not established willfulness as a matter of law. Clear Skies contends Kainu's admission he instructed BitTorrent to obtain a copy of the Movie is sufficient evidence of willfulness.

"To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. vv. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)(quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)). *See also In re Barbosa*, 545 F.3d 702, 707 (9th Cir. 2008)(in context of a copyright infringement claim, "willfulness" can be based on either "intentional" or "reckless" behavior). Not only did Kainu admit to obtaining a copy of the Movie via BitTorrent, he also admitted he did not think the downloading

of the Movie, or the other motion pictures or television shows he downloaded, was legal. In other words, he knew his downloading of the Movie was not legal at the time instructed his BitTorrent program to obtain a copy of the Movie. This conduct clearly qualifies as reckless, if not intentional, behavior. The court finds Kainu engaged in willful copyright infringement.

*Conclusion*

Clear Skies's motion (ECF No. 36) for partial summary judgment on its sole claim for direct copyright infringement should be GRANTED and such infringement should be declared willful.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **September 7, 2017**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 21st day of August, 2017.

JOHN V. ACOSTA
United States Magistrate Judge